UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WANDA J. DURYEA,  :
              Plaintiff,  :
   :
v.  :
   :      **OPINION AND ORDER**
   :
TIMOTHY H. FINNEGAN, Formerly New  :
York State Police, Badge #404; TIMOTHY P.  :      22 CV 6300 (VB)
GOULD, New York State Police; and JAMES  :
WOLLMAN, New York State Police, each in  :
their individual capacities,  :
              Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Wanda J. Duryea, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants, all of whom are active or former police officers for the State of New York, in their individual capacities,[1] alleging they violated plaintiff's rights under New York state law and the Fourth and Fourteenth Amendments when they allegedly assaulted her son in her presence, illegally searched her vehicle and purse, seized her phone, and denied her access to a bathroom.

      Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6).  (Doc. #27).[2]

---

[1]     The Court has previously dismissed plaintiff's claims against defendants in their official capacities as precluded under the Eleventh Amendment.  (See Doc. #7).

[2]     Defendants' standing arguments are rooted in "the general prohibition on a litigant's raising another person's legal rights"—a prudential limitation, rather than one imposed by Article III.  See Lexmark Int'l v. Static Control Components, Inc., 572 U.S. 118, 126 (2014); Collins v. W. Hartford Police Dep't, 324 F. App'x 137, 139 (2d Cir. 2009) (summary order).  "[I]t is not clear whether" Rule 12(b)(1) is "the appropriate vehicle for these arguments." Costantini v. Deutsche Bank Nat'l Tr., 2022 WL 541506, at *5 n.9 (D. Conn. Feb. 23, 2022); New York v. Scalia, 464 F. Supp. 3d 528, 548 n.13 (S.D.N.Y. 2020) (noting the "prudential standing doctrine does not implicate the Court's subject-matter jurisdiction but whether the plaintiff has a valid cause of action" under Rule 12(b)(6)).  However, the undersigned relies only

1

For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and plaintiff's opposition,[3] and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff, a New Hampshire resident, alleges that on July 26, 2019, she, her son (Joseph Brooks), and her niece (Cheyenne Harding) visited the police barracks in Somers, New York, to obtain a signature on Brooks's parolee travel form.

According to plaintiff, defendant Finnegan refused to sign the form and "hit" Brooks. (Doc. #2 ("Compl.") at 5). She further claims Brooks was "falsely arrested" and later assaulted in the parking lot and the barracks. (Id.). Plaintiff claims she paid approximately $1,000 for a bond to secure Brooks's release and incurred "repeated travel expenses," presumably in

---

on the pleadings to resolve the present motion, and hence the Court "need not resolve the issue of whether the motion should be considered under Rule 12(b)(1) or Rule 12(b)(6)." Costantini v. Deutsche Bank Nat'l Tr., 2022 WL 541506, at *5 n.9; New York v. Scalia, 464 F. Supp. 3d at 548 n.13.

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

[3]   When "evaluating the legal sufficiency of a pro se plaintiff's claims" on a motion to dismiss, courts may consider factual allegations in the plaintiff's opposition to the extent those allegations "are consistent with those contained in the complaint." See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases).

2

connection with Brooks's court proceedings.  (Doc. #34 ("Pl. Opp.") at 2).  The charges against Brooks were allegedly dismissed in May 2022.

Also on July 26, 2019, plaintiff alleges defendant Wollman illegally searched her purse and vehicle, a Jeep, and illegally seized her phone.

When Wollman asked for the keys to the Jeep, plaintiff allegedly pressed Wollman for his legal authority to search it.  Wollman cited exigent circumstances as grounds for the search, but plaintiff disagreed and denied consent for the search because "it was the middle of the day and a search warrant could be obtained."  (Pl. Opp. at 6).

Nonetheless, plaintiff released the keys to Wollman and asked to retrieve her purse and cigarettes.  Wollman allegedly handed over plaintiff's cigarettes and lighter but did not provide plaintiff her purse.  Plaintiff implies Finnegan searched her purse looking for her "son's alleged marijuana."  (Pl. Opp. at 5).  In plaintiff's purse, Finnegan purportedly located a small wooden box of pills and told plaintiff she could be arrested for having a prescription not in the original container.

While searching the Jeep, Finnegan allegedly told plaintiff and Harding he would stop the search if they provided him with the marijuana.  Accordingly, plaintiff contends she instructed Harding to give Brooks's "locked medical marijuana case" to Finnegan.  (Pl. Opp. at 5).  Plaintiff allegedly further explained that "there was no marijuana in the vehicle outside of the locked medical marijuana case."  (Id.)

Plaintiff, who has a "walking disability," also allegedly asked Harding to film the vehicle search using plaintiff's phone.  (Pl. Opp. at 4).  Foreseeing Harding's arrest, plaintiff asked Harding to return the phone to her.  Wollman allegedly said Harding could not return the phone, stating he was seizing the phone because he was arresting Harding.

Plaintiff contends she wanted the phone back because it contained "video evidence of police misconduct including the relocation of an antique pistol from a closed suitcase to the exterior pouch of a computer bag." (Pl. Opp at 4). Accordingly, for the next three years, during two of which plaintiff claims she paid monthly charges for the phone, she alleges she repeatedly requested the return of her phone or production of a search warrant. Plaintiff also had to purchase a substitute phone, as the seized phone was her only means of communication. The phone was ultimately returned to plaintiff in June 2022 after the charges against Brooks were dismissed.

According to plaintiff, Finnegan also refused her access to a bathroom during the July 26 incident, stating "[y]ou can wait." (Compl. at 5). She contends she could not wait and vacated her bowels into her clothing. Plaintiff alleges she suffers from irritable bowel syndrome and that this occurrence caused her "IBS pain and symptoms," requiring a visit to her primary care physician and a CT scan in August 2019, an unsuccessful colonoscopy attempt in September 2019, and two colon surgeries in October 2019 and July 2020. (Id. at 5–6). However, all of her pain and colon issues allegedly "resolved" in 2022 once the charges against Brooks were dismissed. (Pl. Opp. at 2). Plaintiff also subsequently sought additional Meniere's disease[4] medication from her physician.

In addition to these medical issues, plaintiff claims the events on July 26 required her to make "[r]epeated court appearances," caused her "complications creat[ing] unwanted stress," and engendered a permanent mistrust of "police, courts and authorities." (Compl. at 5–6). She also

---

[4]  "Meniere's disease is an inner ear problem that can cause dizzy spells, also called vertigo, and hearing loss." Mayo Clinic, Meniere's Disease, https://www.mayoclinic.org/diseases-conditions/menieres-disease/symptoms-causes/syc-20374910 [https://perma.cc/77M9-A6FP] (last visited Feb. 27, 2024).

4

purportedly suffers from "[p]ost-traumatic stress disorder exacerbation," for which she received counseling.  (Id. at 6).

**DISCUSSION**

I.   Standard of Review

    A.   Rule 12(b)(1)

A district court must dismiss an action pursuant to Rule 12(b)(1) "for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it."  Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).

When deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction."  Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).  To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court may resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings.  Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

In addition, when a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should consider the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

    B.   Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled

5

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.     Standing

Among other claims, plaintiff complains she suffered emotional distress watching defendants purportedly assault her son.  Construing these allegations liberally, plaintiff asserts

Section 1983 claims under the Fourth and Fourteenth Amendments and a state law negligence claim.  Defendants challenge plaintiff's standing to bring these claims.

In addition to the Article III "case or controversy" requirements, federal courts must often consider certain prudential limits on a plaintiff's standing to pursue the claims she asserts.  One such "prudential principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties."  Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 358 (2d Cir. 2016).

The Court will separately address plaintiff's prudential standing to assert the Section 1983 claims and the state law claim.

    A.    <u>Section 1983 Claims</u>

Defendants argue plaintiff lacks standing to assert Section 1983 claims concerning harm she suffered based on the alleged use of excessive force on, false arrest of, and malicious prosecution of her son, Brooks.[5]

The Court agrees.

"[T]o prevail in an action brought under § 1983 a plaintiff must show that he or she was deprived of a right, privilege or immunity secured by the Constitution or the laws of the United States."  Morgan v. City of New York, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001).  "[O]nly the person toward whom the state action was directed, and not those incidentally affected[,] may maintain a § 1983 claim."  Id.  For this reason, "a cause of action may not be asserted pursuant to Section 1983 for emotional distress . . . or any other consequent collateral injuries allegedly

---

[5] Plaintiff argues she does not assert these claims on behalf of her son, and instead "brings this suit for her own damages and constitutional deprivations."  (Pl. Opp. at 3).  However, as discussed above and below, her claims ultimately turn on government action directed at plaintiff's son, not her.

7

suffered personally by a victim's family members." Love v. Riverhead Cent. Sch. Dist., 823 F. Supp. 2d 193, 199 (E.D.N.Y. 2011).

Plaintiff claims that witnessing the alleged assault, battery, arrest, and prosecution of her son caused her unwanted stress which exacerbated her preexisting medical conditions. However, "parents lack standing to individually pursue § 1983 claims arising out of their children's alleged constitutional deprivations," and "emotional distress does not constitute a violation of a federally protected constitutional right" giving rise to a Section 1983 claim. Horton ex rel. S.H. v. Bd. of Educ., 2016 WL 2354266, at *2, 3 (N.D.N.Y. May 4, 2016). That plaintiff purportedly attended court proceedings and funded a bond securing Brooks's release likewise does not establish she suffered any constitutional violation.

Accordingly, plaintiff's Section 1983 claims arising from her son's alleged assault, battery, arrest, and prosecution must be dismissed.

B.   Negligence Claim

Defendants argue plaintiff's negligence claim arising from the purported assault and battery of Brooks must be dismissed because plaintiff was not within the requisite "zone-of-danger."

The Court agrees.

Under New York law, "a mother [may] bring a negligence action for emotional distress if, due to the defendant's conduct she herself is threatened with bodily harm and she views the death or serious injury of her child." Morgan v. City of New York, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) (citing Bovsun v. Sanperi, 61 N.Y.2d 219, 228 (1984)). Narrowly circumscribed, this exception applies only when the plaintiff herself is negligently exposed to "an unreasonable risk of bodily injury or death" and allows such plaintiff to recover "damages

for injuries suffered in consequence of the observation of the serious injury or death" of an immediate family member.  Bovsun v. Sanperi, 61 N.Y.2d at 230–31.

Here, plaintiff alleges she "saw" her son being "hit" and "assaulted."  (Compl. at 5).  She does not allege she herself faced any threat of bodily harm, which is fatal to her ability to bring a negligence claim.  See e.g., Zea v. Kolb, 204 A.D.2d 1019, 1019–20 (4th Dep't 1994) (plaintiff who was on the opposite side of the street and twelve to fifteen feet from her daughter when her daughter was struck by a car and died was not in the zone of danger).

Accordingly, plaintiff's negligence claim must be dismissed.

III.    Failure to State a Claim

Liberally construing the complaint, plaintiff also claims defendants violated her constitutional rights when they denied her access to a bathroom, searched her vehicle, searched her purse, and seized her phone.  None of these claims is adequately pleaded.

    A.    Defendant Gould:  Personal Involvement

As an initial matter, none of plaintiff's factual allegations in the complaint or opposition involve defendant Gould.

To state a claim under Section 1983, a plaintiff must allege facts showing a defendant's direct and personal involvement in the alleged constitutional deprivation.  See Spavone v. N.Y.S. Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

Plaintiff has failed to plead Gould was personally involved in any unconstitutional conduct and, accordingly, all claims against Gould must be dismissed.

9

B.     Fourteenth Amendment Denial of Bathroom Access

Considering plaintiff's allegations in the light most favorable to her, the claim that Finnegan denied her bathroom access could be construed as a contention that he violated plaintiff's rights under the Fourteenth Amendment.

1.     Legal Standard

The Due Process clause of the Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  It "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests."  DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989).  However, a person detained by the State prior to an adjudication of guilt has "not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  Thus, "when the State takes a person into its custody and holds him there against his will," this restraint of individual liberty "renders him unable to care for himself" and the Constitution imposes on the State a duty to "provide for his basic human needs."  DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. at 199–200.

Accordingly, under the Fourteenth Amendment, "the proper inquiry is whether [the] conditions [of involuntary confinement] amount to punishment of the detainee."  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  This standard recognizes it is not a fundamental liberty to be "free from discomfort."  Id. at 534.  Neither is it to "use the bathroom . . . whenever [one] please[s]."  Treat v. Cent. N.Y. Psychiatric Ctr., 2013 WL 6169746, at *2 (N.D.N.Y. Nov. 20, 2013).

Therefore, "[t]he temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, does not rise to the level of an objective

constitutional violation." DeLaney v. Canfield, 2020 WL 3893272, at *5 (S.D.N.Y. July 10, 2020) (collecting cases denying Eighth Amendment claims asserting denial of bathroom access for between seventy minutes and three hours); see also Cano v. City of New York, 44 F. Supp. 3d 324, 332 (E.D.N.Y. 2014) (noting the standard for conditions of confinement claims "is the same under the Fourteenth and Eighth Amendments"). However, denying someone detained by the State the ability "to eat, drink, or use the bathroom for several hours" may be sufficient to state a claim. Cano v. City of New York, 44 F. Supp. 3d at 334 (pretrial detainees who were denied access to a restroom, among other deprivations, for ten to twenty-four hours stated a Fourteenth Amendment claim).

        2.      <u>Analysis</u>

Even liberally construing plaintiff's allegations in the light most favorable to her, she fails to plead critical facts necessary to state a Fourteenth Amendment claim. That is, even assuming plaintiff's colon surgeries resulted from Finnegan denying her bathroom access, the Court would have to invent allegations on plaintiff's behalf that she was actually detained by defendants, that she informed the officers of her irritable bowel syndrome and how that condition contributed to her need to urgently relieve herself, and that the denial of bathroom access was of a sufficient duration to give rise to a constitutional claim.

Unlike Brooks and Harding, plaintiff was not arrested, and Finnegan's statement to plaintiff that she "can wait" to use the bathroom does not suggest plaintiff was involuntarily detained by police. See Immigr. & Naturalization Serv. v. Delgado, 466 U.S. 210, 215 (1984) (a person is detained within the meaning of the Fourth Amendment "if, in view of all circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). In fact, despite bringing several Fourth Amendment claims pertaining to the alleged

search or seizure of her property, plaintiff does not argue that <u>she</u> was seized, belying the contention that she ever believed she was in police custody.

And, even if she was detained during the events in question, plaintiff has not pleaded facts from which the Court may reasonably infer that her denial of bathroom access was of sufficient duration to support a constitutional violation. <u>See</u> <u>DeLaney v. Canfield</u>, 2020 WL 3893272, at *5–6 (inmate who was "restricted from using the bathroom for between 30 to 60 minutes five days a week" failed to state a constitutional claim because he "never alleges that he informed [the officer] of how his medical ailments required him to use the bathroom"); <u>cf.</u> <u>Hart v. City of New York</u>, 2013 WL 6139648, at *7–9 (S.D.N.Y. Nov. 18, 2013) (denying summary judgment when inmate-plaintiff "specifically informed" the officer that "he had MS, which causes frequent urination," and "he was nonetheless denied his repeated requests to use the bathroom" for a period of twelve hours, during which he "repeatedly soiled himself").

Accordingly, plaintiff's Fourteenth Amendment claim must be dismissed.

C. <u>Fourth Amendment Search and Seizure Claims</u>

1. <u>Legal Standard</u>

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "In any § 1983 claim predicated on the Fourth Amendment, the first step is to determine whether there has been a constitutionally cognizable search or seizure." <u>Velasquez v. City of New York</u>, 2012 WL 5879484, at *4 (E.D.N.Y. Nov. 21, 2012) (citing <u>Medeiros v. O'Connell</u>, 150 F.3d 164, 167 (2d Cir. 1998)).

A Fourth Amendment "search" occurs when an "individual manifest[s] a subjective expectation of privacy in the object of the challenged search, and society is willing to recognize

that expectation as reasonable." Kyllo v. United States, 533 U.S. 27, 33 (2001).  Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).

For example, under the automobile exception to the Fourth Amendment warrant requirement, "officers may conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." United States v. Wilson, 699 F.3d 235, 245 (2d Cir. 2012).  Probable cause to search "exists where the totality of the circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" Cucuta v. New York City, 25 F. Supp. 3d 400, 411 (S.D.N.Y. 2014 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Moreover, exigent circumstances are not required to justify a search under the automobile exception. United States v. Feliz, 657 F. Supp. 2d 364, 372 (E.D.N.Y. 2009).  If a vehicle is "readily mobile" and there is probable cause that it contains contraband, the Fourth Amendment permits police to search it.  Id.  As part of that search, officers may also "inspect passengers' belongings found in the car that are capable of concealing the object of the search." Wyoming v. Houghton, 526 U.S. 295, 307 (1999).  This includes a "closed bag." Edwards v. Castro, 2018 WL 4680996, at *12 (S.D.N.Y. Sept. 28, 2018).

In addition, officers may conduct a warrantless seizure of personal property incident to an arrest.  Chimel v. California, 395 U.S. 752, 763 (1969).  Under this exception, an officer may seize evidence that is "on the arrestee's person" or in "the area within his immediate control" without a warrant to "prevent its concealment or destruction."  Id.  However, officers must apply

13

for a warrant to search the contents of a cell phone seized incident to an arrest.  Riley v. California, 573 U.S. 373, 403 (2014).

        2.        Analysis

              a.        Vehicle Search

Plaintiff has failed to plead defendants unconstitutionally searched her vehicle.

Plaintiff's allegations establish, rather than refute, that defendants had probable cause to search the Jeep because they knew or had reason to believe that marijuana (which was not legal in New York at the time) was present in the vehicle.  Cf. People v. Henderson, 197 A.D.3d 663, 664 (2d Dep't 2021) (holding police officers have probable cause to search a vehicle and its occupants when there is an "odor of marijuana emanating from" it).  Plaintiff replied to defendants' request to search by responding "there was no marijuana in the vehicle outside of the locked medical marijuana case."  (Pl. Opp. at 6).  Finnegan purportedly told plaintiff that if she "provided the marijuana to him he would not need to search the Jeep," which caused plaintiff to "instruct[] [Harding] to provide [Brooks's] locked medical marijuana case to Finnegan."  (Id. at 5).

The only plausible reading of these allegations is that plaintiff informed defendants there was marijuana in the vehicle when they asked to search her car.  Although Finnegan allegedly represented he would not search the car if plaintiff provided him with the marijuana, the circumstances were still sufficient to constitute probable cause to search plaintiff's vehicle and a constitutional basis for the search.

Accordingly, the Fourth Amendment claim arising from the search of plaintiff's vehicle must be dismissed.

14

b.      Purse Search

Likewise, the search of plaintiff's purse was constitutional because, crediting her allegations as true, defendants had probable cause to believe there was marijuana in plaintiff's vehicle, and plaintiff alleges her purse was located in her vehicle. "The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found," which includes "containers and packages that may conceal the object of the search." United States v. Wilson, 699 F.3d at 246. Based on the facts plaintiff alleges, defendants had a constitutional basis to search the purse once they suspected marijuana was in the vehicle.

Accordingly, the Fourth Amendment claim arising from defendants' search of plaintiff's purse must be dismissed.

c.      Phone Seizure

Finally, plaintiff has failed to plead the seizure of her phone violated the Fourth Amendment because, crediting her allegations, the phone was seized incident to Harding's arrest.

Harding was allegedly filming the search of the Jeep using Duryea's phone when she was arrested. Therefore, plaintiff's allegations can only be understood to mean the phone was "on [Harding's] person" or "within [her] reaching distance" at the time of her arrest. United States v. Watson, 2023 WL 7300618, at *3–4 (E.D.N.Y. 2023). Moreover, these allegations, the truth of which is assumed for purposes of this motion, show Wollman also had reason to believe the phone contained "evidence of a crime"—namely, a video of the group's possession of marijuana and, possibly, possession of a weapon—and that it was necessary to secure the phone to "prevent its concealment or destruction." Id. at *3.

Plaintiff alleges she subsequently requested the return of her phone or production of a search warrant, but that it was not returned for nearly three years. This allegation also fails to plead a Fourth Amendment violation because the initial seizure, based on the facts alleged, was constitutionally sound, see Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004) ("Where . . . an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure."), and plaintiff does not allege the contents of the phone were ever searched. See United States v. Watson, 2023 WL 7300618, at *3 (approving of "the warrantless seizure of electronic devices" incident to arrest "as long as the agents then obtain a warrant before searching them").

Accordingly, the Fourth Amendment claim arising from the seizure of plaintiff's cell phone must be dismissed.[6]

IV.     Leave to Amend

Plaintiff, in her opposition, requests leave to amend if the Court grants defendants' motion to address any deficiencies identified by the Court. (Pl. Opp. at 1).

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). Thus, district courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might

---

[6] Because all claims are being dismissed, the Court does not address defendants' arguments concerning qualified immunity.

be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But, "a futile request to replead should be denied." Id.

Here, plaintiff was given a full and fair opportunity to address the deficiencies identified by defendants' motion. Indeed, in her opposition, plaintiff proffers several pages of additional facts in support of (i) her Section 1983 and state law negligence claims arising from witnessing her son's alleged injuries and (ii) her Fourth Amendment search and seizure claims. But even considering all these facts, she does not surmount the minimal pleading burden necessary to survive defendants' motion to dismiss for all the reasons discussed in this Opinion and Order. Moreover, plaintiff's opposition neither responds to nor offers further facts refuting defendants' arguments concerning her Fourteenth Amendment claim (and, as discussed above, the factual allegations she has pleaded are far from sufficient to state a due process claim).

Therefore, having read the complaint and opposition liberally, the Court does not find any allegations suggesting that plaintiff has a valid claim she has merely "inadequately or inartfully pleaded" such that she should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112.[7] On the contrary, the Court finds that repleading would be futile, because the

---

[7] Brooks has filed a separate lawsuit, over which the undersigned presides, against the same defendants and arising out of the same events involved in this lawsuit. See Brooks v. Finnegan, No. 22-cv-6283 (VB) (S.D.N.Y. filed July 24, 2022) (the "Related Case"). The facts alleged in the Related Case, if credited, would also cast serious doubt on plaintiff's ability adequately to replead her negligence and Fourteenth Amendment claims. That said, to resolve the present motion to dismiss, the Court may take judicial notice of documents filed in another action "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, the Court cannot assume the truth of Brooks's allegations in the Related Case when evaluating whether plaintiff's request to replead would, in this case, be futile. See AJR Trucking v. Worthington Indus., Inc., 2020 WL 5791087, at *2 (C.D. Cal. Aug. 7, 2020) (declining, on a Rule 12(b)(6) motion, to "accept as true statements made in a Notice of Related Case filing that contradict allegations made in [the] complaint").

problems with plaintiff's claims are substantive, and supplementary and/or improved pleading will not cure the deficiencies of the complaint. See id.

Accordingly, plaintiff's request for leave to amend is denied.

## CONCLUSION

The motion to dismiss is GRANTED. All of plaintiff's claims are dismissed.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion and close this case. (Doc. #27).

Chambers will mail a copy of this Opinion and Order and all unpublished decisions to plaintiff at the address on the docket.

Dated: March 5, 2024
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge